UNITED STATES DISTRICT COURT WESTERN
DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:15CV89-GCM

| | | |
|---|---|---|
| **DEBORAH E. MESSER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon Plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on May 7, 2004. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ") on July 9, 2007. After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff

1

ultimately sought review. The district court issued a consent order to remand the case for further administrative proceedings. On remand, a new hearing was held before the same ALJ, who issued a new decision finding Ms. Messer not disabled from May 7, 2004, through August 24, 2010. Messer ultimately sought review of this second ALJ decision by a district court, and the district court remanded the case for further administrative proceedings because the ALJ stated that he relied on VE testimony in finding Ms. Messer not disabled but cited only Medical-Vocational Guidelines in his decision. On remand, a new hearing was held and on November 15, 2013, a different ALJ found that Ms. Messer had not been disabled since May 7, 2004. Plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

B.  **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

C.   **The Administrative Decision**

The ALJ found at step one of the sequential evaluation that Ms. Messer had not engaged in substantial gainful activity since May 7, 2004, and at step two that Ms. Messer had the following severe, medically determinable impairments: lumbar degenerative disc disease, obesity, chronic obstructive pulmonary disease, and non-alcoholic steatosis hepatitis. (Tr. 511-519). The ALJ then found at step three that none of Ms. Messer's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404 Subpt. P, App. 1. (Tr. 519).

Before proceeding to step four, the ALJ found that Ms. Messer had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 416.967(b), except:

> No work around concentrated amounts of dust, smoke, fumes, or similar irritants, no work around unprotected heights or dangerous machinery, and would need to work in a low stress setting with no high production demands, low social demands, or work with the public.

(Tr. 519-23). The ALJ then found at step four that Ms. Messer had no past relevant work (Tr. 523-24) and at step five that jobs existed in significant numbers in the national economy that Ms. Messer, given her age, education, work experience, and RFC, could perform (Tr. 524-25). Thus, the ALJ found that Ms. Messer was not

disabled within the meaning of the Act from May 7, 2004, through November 15, 2013. (Tr. 525).

    **D.    Discussion**

        **1.    Plaintiff's Assignments of Error**

Plaintiff argues that the ALJ erred by: (1) failing to appropriately weigh the opinion evidence of Dr. Rasheda Ahsanuddin, Dr. J. Pitt Tomlinson, and Dr. Clifford Charles, and (2) failing to find Ms. Messer's mental impairments severe. Plaintiff's assignments of error will be discussed seriatim.

        **2.    First Assignment of Error**

An ALJ considers the following factors in determining the weight to give to an opinion from a non-treating medical source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's supportability, particularly by medical signs and laboratory findings; (4) the opinion's consistency with the record as a whole; (5) the medical source's specialization as it relates to his or her opinion; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c).

The Plaintiff contends that the ALJ failed to sufficiently explain the rationale for rejecting the opinions of Drs. Ahsanuddin, Tomlinson and Charles. A review

of the ALJ's decision, however, demonstrates that he explained the rationale for his assignation of weight to these opinion in considerable detail, and substantial evidence supports his finding.

The ALJ attached little weight to the opinion of Dr. Ahsanuddin, the state agency consultative psychiatrist. In Dr. Ahsanuddin's April 2005 opinion, she found that Ms. Messer was unable to sustain attention adequately to perform simple, repetitive tasks; was unable to relate to others; and could not tolerate the stress and pressures of an ordinary workday. (Tr. 185). The ALJ reasoned that, although Dr. Ahsanuddin made some abnormal findings — for example, that Ms. Messer was unable to perform simple calculations— Dr. Ahsanuddin's opinion was not entitled to any weight because it was: a) based primarily on Ms. Messer's subjective reports of symptoms, the validity of which were questionable given a contemporaneous examination that suggested Ms. Messer malingered; b) inconsistent with the records of Ms. Messer's treating health professionals; and c) based on only a solitary examination of Ms. Messer. (Tr. 522-23).

The ALJ's observation that Dr. Ahsanuddin's opinion was based on Ms. Messer's subjective statements is supported by the record. Dr. Ahsanuddin, a psychiatrist, stated that her opined limitations were due, in part, to Ms. Messer's "chronic pain." (Tr. 184-185). Thus, Dr. Ahsanuddin explicitly based her opined

limitations on Ms. Messer's subjective statements about her pain and her subjective presentation. The ALJ noted that a contemporaneous physical examination[1] performed by Dr. Goodson, a physician, revealed that there were significant validity problems with Ms. Messer's subjective endorsement of pain and her demonstration of pain behaviors. (Tr. 523). Indeed, Dr. Goodson noted that Ms. Messer demonstrated "a poor effort" during examination and that, when she left the examination and walked in the parking lot, she demonstrated a greater ability to walk than when she was being examined. (Tr. 188-89). Thus, Dr. Ahsanuddin relied on Ms. Messer's report and presentation of symptoms caused by impairments outside her specialty, while a contemporary examination by Dr. Goodson, who is a physician and thus better suited to assess the physical impairments causing the putative symptoms, revealed that Ms. Messer's report and presentation of symptoms had considerable validity problems.[2] The ALJ

---

[1] Ms. Messer argues that the ALJ erred because he stated that Dr. Goodson's examination occurred prior to that of Dr. Ahsanuddin, when in fact it was the day after Dr. Ahsanuddin's examination. The ALJ mentioned the relative dates of the two examinations only to show their proximity to one another. Ms. Messer's clarification that Dr. Goodson's examination occurred the day after Dr. Ahsanuddin's examination does not diminish the ALJ's reasoning or analysis.

[2] Although it is true that there is no evidence that Dr. Ahsanuddin believed that Ms. Messer was malingering, this is not dispositive of whether the ALJ's analysis was reasonable. A health professional need not note that a claimant is malingering for an ALJ to conclude that there were credibility problems with the claimant's presentation that undermine the supportability of an opinion. *See Roberts v. Astrue*, No. 1:11-cv-00236-MR, 2013 WL 663306, at *7 (W.D.N.C. Feb. 22, 2013) ("The ALJ . . . reasonably determined [the opinion] was not entitled to great weight because it was largely based upon the Plaintiff's own statements which the ALJ found not fully credible.").

reasonably concluded that Dr. Ahsanuddin's reliance on Ms. Messer's endorsement of physical pain rendered the doctor's opinion entitled to less weight.

The ALJ additionally noted that the opinion of Dr. Ahsanuddin was not consistent with the examination findings of Ms. Messer's treating health care providers and not indicative of Ms. Messer's baseline level of functioning during the nine years between her application date and the date of his decision. (Tr. 522-23). The ALJ's characterization of the record was reasonable. The ALJ noted that, when Ms. Messer was seen by her treating physicians, who prescribed her psychotropic medication, she never complained that her treatment regimen was ineffective or that her mental impairments were symptomatic. (Tr. 513, 515, 518-19, 523). Indeed, the record indicates that Ms. Messer only occasionally requested a refill of her psychotropic medication, while her physicians noted that she reported "feeling fairly well" (Tr. 172), that her "depression has improved" (Tr. 170), that she was "doing well" (Tr. 408), and that she had reduced her dosage of psychotropic medication (Tr. 710). The ALJ further noted that Ms. Messer admitted never having been referred to a mental health care specialist by her treating physicians, which the ALJ viewed as evidence that they considered her symptoms relatively insignificant. (Tr. 523). Further, Ms. Messer generally did not complain to health professionals, save for those who performed the consultative

examinations ordered by the Social Security Administration, about any debilitating social and concentration deficits, and she routinely denied symptoms of mental illness when asked by treating health professionals. (*See*, *e.g.*, Tr. 410-12, 444, 662, 672, 675, 690-92, 694). The ALJ reasonably weighed the single instance of abnormal findings made by Dr. Ahsanuddin against the nine years of Ms. Messer's denying symptoms of mental illness or merely requesting psychotropic medication refills while endorsing their efficacy. The ALJ adequately explained his rationale for discounting Dr. Ahsanuddin's opinion, and substantial evidence supports his finding.

Contrary to Ms. Messer's argument, the ALJ did not ignore the abnormal findings made by Dr. Ahsanuddin in considering the supportability of Dr. Ahsanuddin's opinion. Rather, the ALJ listed the abnormal findings made by Dr. Ahsanuddin but concluded that the evidence did not support Dr. Ahsanuddin's opinion in light of the validity problems noted with Ms. Messer's subjective presentation, the lack of other similarly abnormal findings over a nine-year period, and a treatment regimen that was conservative and that both Ms. Messer and her physicians considered efficacious.

Plaintiff next argues that the ALJ erred in weighing the opinion of Dr. Charles, a state agency medical consultant, who opined that Ms. Messer would

have moderate difficulties in social functioning and maintaining concentration, persistence, or pace and concluded that limiting Ms. Messer to simple, routine, repetitive tasks would accommodate those difficulties. (Tr. 201, 203, 214). The ALJ found that the record did not support Dr. Charles's opinion for multiple reasons: it was the opinion of a non-examining source that cited only the examination of Dr. Ahsanuddin, whose findings were based heavily on subjective statements; it was not consistent with the treating health providers' treatment regimen; and it was based on Dr. Ahsanuddin's solitary 2005 examination though more than a nine-year period was under review. (Tr. 523). As discussed in the analysis of Dr. Ahsanuddin's opinion above, these grounds for discounting Dr. Charles's opinion are all accurate characterizations of the record and have significant evidentiary support.

The ALJ also afforded little weight to Dr. Tomlinson's opinion that Ms. Messer had overhead reaching and fingering limitations because it appeared to be based on Dr. Goodson's range of motion testing performed during an examination in which the claimant malingered. (Tr. 523). Ms. Messer argues that the ALJ erred in weighing Dr. Tomlinson's opinion because Dr. Tomlinson based his opinion on the examination findings of Dr. Girmay and not those of Dr. Goodson, whose examination postdates Dr. Tomlinson's. She further argues that her subjective

statements to Dr. Girmay on December 10, 2004, the examination findings of Dr. Girmay, and her subjective statements regarding her activities of daily living support Dr. Tomlinson's opinion.

Ms. Messer is correct that the ALJ misstated which examination formed the basis of Dr. Tomlinson's opinion.[3] However, the ALJ provided ample explanation elsewhere in the decision as to why the record did not support Dr. Tomlinson's opinion regarding Ms. Messer's fingering and reaching limitations. *See Smith v. Astrue*, 457 Fed. App'x 326, 328 (4th Cir. 2011) (ALJ's decision must be read as a whole and the analysis relevant to a particular finding may be found outside the explicit discussion of that finding). The ALJ explicitly considered what limitations in reaching and fingering might be indicated by Dr. Girmay's findings and reasoned:

> Dr. Girmay's exam showed some weakness in handgrip bilaterally but did not indicate that she had any significant problems with fine or gross manipulation (Exhibit 2F). Dr. Goodson did not assess any significant limitations with the claimant's hands and noted poor effort throughout testing (Exhibit 4F). Dr. Goodson also noted negative Tinel's and Phalen's signs and no neurological deficits. [Ms. Messer] sought treatment in June 2006 and apparently considered carpal tunnel release and cyst excision in June 2006, but there is no evidence that she followed up with this, and there is scant reference to any further treatment.

---

[3] The ALJ's statement that Dr. Tomlinson relied on Dr. Goodson's examination instead of Dr. Girmay's appears to be a typographical error and, in any event, was harmless error. An error is harmless and remand is inappropriate if the ALJ would not "reach a different conclusion or decision upon remand." *Clontz v. Astrue*, No. 2:12-CV-00013-FDW, 2013 WL 3899507, at *6 (W.D.N.C. July 29, 2013).

> Thus, as previously stated I conclude that [Ms. Messer] has no significant limitations in fine or gross manipulation that would preclude a wide range of light work activity.

(Tr. 522).

Elsewhere, the ALJ noted that, during Dr. Girmay's examination:

> [Ms. Messer's] handgrip was weak, but both physical consultative exams at Exhibits 2F and 4F found negative Tinel's and Phalen's signs. She was examined by an orthopedic specialist in 2006 for her symptoms. Although he apparently was willing to perform a carpal tunnel release, his exam notes reflected scant physical findings related to this complaint, nor any significant evidence regarding limitations using her hands. The record contains no electrodiagnostic studies confirming the presence of carpal tunnel syndrome. . . . The state agency consultative report at Exhibit 4F did not note any difficulty with fine dexterity, and that physician specifically noted that she was able to turn pages in a magazine without difficulty. The attorney relied on the claimant's weakness, but that is a subjective complaint[]. If a physician says push against my arm, or grip my extended fingers and squeeze, the results are only a reflection of how hard a person chooses to push or squeeze. The record contains no evidence of any ongoing treatment for this complaint since the application date.

(Tr. 517-18).

Additionally, the ALJ noted that a medical expert, Dr. Bryan, who reviewed the record after the case was first remanded — including Dr. Girmay's and Dr. Goodson's examination findings (Tr. 474-77) — concluded that there was essentially "nothing objectively wrong with [Ms. Messer] from a physical standpoint" (Tr. 516) and that the medical evidence entered into the record after the medical expert testified "show[ed] little objective support for [Ms. Messer's]

13

primary complaints" (Tr. 516). Thus, the ALJ repeatedly explained that although Dr. Girmay made some abnormal findings, those findings were contradicted by: (1) normal Tinel's and Phalen's signs in the record; (2) Ms. Messer's ability to engage in fingering activities such as turning the pages of a magazine; (3) the normal examination findings of an orthopedic specialist in 2006; (4) Ms. Messer's decision not to pursue any treatment that could improve her putative fingering limitations; (5) the testimony of Dr. Bryan at the second hearing; and (6) the subjective nature of the tests performed by Dr. Girmay combined with the record evidence of Ms. Messer's propensity to put forth less than good effort on such tests. The ALJ provided ample analysis of why he concluded that the record ultimately did not support the existence of any upper extremity limitations and, under *Smith*, 457 Fed. App'x at 328, that analysis provides the rationale for the ALJ's assignment of weight to Dr. Tomlinson's opinion.

In addition to the foregoing, Ms. Messer argues that the ALJ was unclear when he stated that his decision is supported by the state agency medical *consultants*, when in reality "the only State Agency Consultant that truly supports the ALJ's decision to deny benefits is Dr. Williams." Ms. Messer's argument is not supported by the record. The state agency consultants universally concluded that the denial of benefits was appropriate, though they might have arrived at that

conclusion by a different path than the ALJ. (Tr. 52-53). Because the state agency consultants themselves opined that Ms. Messer was not disabled, her argument that they did not support the ALJ's decision to deny benefits fails.

### 3. Second Assignment of Error

Ms. Messer contends that the ALJ's evaluation of the severity of her mental impairments is not supported by the record. A medically determinable impairment is not severe if it causes only a minimal effect on the individual and would not be expected to interfere with the individual's ability to work. 20 C.F.R. § 416.920; *McCoy v. Colvin*, No. 1:12-cv-00159-MR-DLH, 2014 WL 221103, at *4 (W.D.N.C. Jan. 21, 2014). In assessing whether a mental impairment is severe, the ALJ must rate the degree of functional limitation the individual experiences in four domains: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 416.920a(b), (c). If the ALJ concludes that an individual has no more than a mild limitation in any of the first three domains and has experienced no episodes of decompensation, then the mental impairments are not severe unless the evidence otherwise indicates. 20 C.F.R. § 416.920a(d). The regulations state that the ALJ should consider all evidence in order to construct "a *longitudinal* picture of [the individual's] overall degree of functional limitation." 20 C.F.R. § 416.920a(c)(1) (emphasis added).

In this case, as discussed above, the ALJ carefully considered the longitudinal picture of Ms. Messer's mental symptoms and weighed the examination and opinion of Dr. Ahsanuddin, which occurred on one day in April of 2005, against the nine years of medical evidence indicating that Ms. Messer either denied or failed to report symptoms of mental illness. (Tr. 518). The ALJ's characterization of the record was reasonable. During the 23-year period in which Ms. Messer alleges she was disabled, she received only prescriptions for psychotropic medication from her treating health professionals and never alleged to those treating health professionals that her medication regimen was ineffective, that she was experiencing panic attacks, or that she was experiencing any of the other symptoms she now alleges render her disabled. (*See*, *e.g.*, Tr. 170, 172, 253, 403, 408, 710). Indeed, Ms. Messer has frequently denied experiencing any mental health symptoms when asked. (Tr. 410-12, 444, 662, 672, 675, 690-92). It was thus reasonable for the ALJ to conclude that Ms. Messer's allegations to the consultative examiners needed to be viewed "with a jaundiced eye" since there were indications that her alleged limitations were exaggerated. (Tr. 518).

Having concluded that Ms. Messer's allegations regarding her mental health symptoms were not entirely credible and noting that she made no complaints and demonstrated no mental abnormalities on examination during the nine-year period

considered by the ALJ save for the solitary consultative psychological examination performed by Dr. Ahsanuddin, the ALJ specifically evaluated the degree of limitation Ms. Messer experienced in the four functional areas noted above and found only mild limitations. (Tr. 518-19). As discussed in more detail above, the Court finds that substantial evidence supports the ALJ's finding that she had no severe mental impairments.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales*, *supra*; *Hays v. Sullivan*, *supra*. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

# ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: September 13, 2016

Graham C. Mullen
United States District Judge